STATE OF CONNECTICUT:  3:19mj418 DFM

:  ss: Hartford, Connecticut

COUNTY OF HARTFORD  :  March 7, 2019

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Postal Inspector Joshua L. Governale, being duly sworn, hereby deposes and states:

1. I am a United States Postal Inspector assigned to the New Haven, Connecticut Domicile of the United States Postal Inspection Service. I have been so employed since August 2017. I am currently assigned to the Connecticut and Western Massachusetts Financial Crimes Team. As a United States Postal Inspector assigned to the Financial Crimes Team, my duties and responsibilities include, but are not limited to, the investigation of mail theft, identity theft and financial crimes. Prior to becoming a U.S. Postal Inspector, I was employed for seven years as a federal air marshal. I have received training in the areas of search and seizure, financial investigations and criminal law. During the course of my service as a Postal Inspector, I have conducted or participated in numerous investigations into identity theft, mail theft and mail fraud schemes and other illegal activities, which involved, among other things, controlled deliveries, physical surveillance, electronic surveillance, and the execution of search warrants.

2. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 3061 and am empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516 and other federal offenses.

3. I am the case agent in the investigation of HENRY A. FELLELA, JR. (D.O.B.

1

##/##/1958), in connection with a series of mail thefts and access device frauds occurring in Connecticut in between September 2018 and present. I have participated in the investigation regarding these offenses and, as a result of this participation, as well as from information provided to me by other members of law enforcement, I am thoroughly familiar with the information contained herein.

4. I submit this affidavit in support of a criminal complaint charging FELLELA with violations of Title 18, United States Code, Section 1029(a)(2) (access device fraud) and Section 1028A (aggravated identity theft).

5. This affidavit sets forth facts and evidence sufficient to show probable cause for the criminal complaint but does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter. The statements contained in this affidavit are based on information and belief based, in part, on my review of reports and information provided to me by witnesses and other members of law enforcement.

**PROBABLE CAUSE TO ARREST HENRY FELLELA, JR.**

6. In March 2018, HENRY A. FELLELA, JR., hereinafter "FELLELA," was released on supervised release following a 48-month federal prison sentence imposed by the United States District Court for the District of Rhode Island for credit card fraud, aggravated identity theft, Social Security fraud, and theft of government property. While on supervised release between September 2018 and present, FELLELA has intercepted and used credit cards that belong to Connecticut residents. He uses these credit cards to make purchases at various stores and retailers throughout Connecticut without the true owners' knowledge or consent.

**Suspect Fraudulent Use of Credit Cards belonging to S.G. and D.F.**

7. On October 2, 2018, an individual with initials S.G. and who resides in Old Lyme, Connecticut, filed a report with the Old Lyme Police Department stating that a credit card was stolen from her mailbox and used in various stores in Connecticut.

8. S.G. reported that she has a Bank of America credit card that she has not used since 2008. She knew from speaking with Bank of America representatives that Bank of America had sent her a new credit card sometime in September 2018. At some point before September 17, 2018, S.G.'s new credit card was either taken from her mailbox or otherwise stolen from the mail while being shipped to her house. S.G.'s paper credit card statements from September and October revealed that the card had been used five times in September 2018. S.G. did not possess and did not use the card during this time frame.

9. S.G.'s credit card statement for the month of September 2018 indicated that the card had been used at the following locations and for the following amounts: Aldi Grocery Store in Waterford, CT for $70.37; Best Buy in Manchester, CT for $1,364.36; Best Buy in North Haven, CT for $2,233.34; Best Buy in West Hartford, CT for $2,232.29; and Best Buy in Orange, CT for $2,232.29.

10. A representative from Aldi Grocery Store confirmed that S.G.'s credit card had been used on September 17, 2018, at approximately 3:37 p.m. to purchase a variety of groceries, including perishable items like fruit, dairy, and meats. Video footage at Aldi Grocery Store for that time frame revealed that the individual who used her card that day matches the physical description of FELLELA.

11. When contacted by law enforcement shortly after S.G.'s report, a representative from the North Haven Best Buy store reviewed video footage from September 19, 2018, during

the time frame when S.G.'s card was used at that location. Video footage of the North Haven Best Buy store for that time frame revealed that the individual who used S.G.'s card appeared to be the same individual seen on the Aldi Grocery Store footage. The individual used S.G.'s card to purchase one Apple MacBook Pro laptop computer.

12. On September 21, 2018, S.G.'s credit card was used at the Orange Best Buy to buy a second Apple MacBook Pro laptop computer, which was an identical model of the laptop computer bought at the North Haven Best Buy two days earlier. Video footage from the Orange Best Buy around the time S.G.'s card was used shows an individual who matches the description of the individual from the Aldi Grocery Store and North Haven Best Buy footage, entering and leaving the main entrance of the store during approximately the same time frame that S.G.'s credit card was used.

13. On October 21, 2018, the North Haven Best Buy representative contacted law enforcement to report that the individual from the September 19, 2018, video footage had returned to the store that day. Receipt records of his activity in the store on October 21, 2018, revealed that he purchased $2,360.94 worth of goods using a Chase Visa credit card belonging to an individual with initials D.F. The individual used D.F.'s credit card to purchase an Apple iPad Pro tablet device, Apple AirPods, a Microsoft Surface Pro 6 laptop computer, and a Cuisinart metal toaster. Video surveillance revealed an individual carrying those purchased goods out of the store who matches both the physical description of FELLELA and of the individual captured on video using S.G.'s card at Aldi Grocery Store and the North Haven and Orange Best Buy stores in September 2018.

14. I know from speaking with investigators at Chase Bank that D.F.'s credit card

was mailed to D.F.'s home address on or around October 8, 2018, and that the card was marked as "lost" and closed due to fraud on October 27, 2018. I know from my training and experience and from my review of this investigation that D.F.'s card was likely intercepted in the mail before being fraudulently used at the North Haven Best Buy on October 21, 2018.

15. Upon review of the evidence, including photographs of FELLELA supplied by the Johnston Police Department, there is probable cause to believe, and I do believe, that the individual seen on video using S.G.'s credit card at Aldi Grocery Store, the North Haven Best Buy, and the Orange Best Buy in September 2018, and the individual seen on video leaving the North Haven Best Buy after using D.F.'s credit card on October 21, 2018, is FELLELA.

16. A registration check of the license plate of the vehicle the individual drove to the North Haven Best Buy on October 21, 2018, as captured on video surveillance, revealed that the vehicle was registered to an address in Johnston, Rhode Island. The registration was in the name of one of FELLELA's adult sons. Based on the apparent age of the individual seen on video, who is described by other witnesses as being "in his late sixties," and the age of FELLELA's children as indicated in historical reports by the United States Probation Services, I believe that FELLELA was the individual who drove the vehicle to and from the North Haven Best Buy that day, and that he was not accompanied by anyone else.

17. Discussions with the Johnston Police Department revealed that the individual who resides at the house located at the Johnston, Rhode Island address is FELLELA. Officers from Johnston Police Department relayed that they knew this to be FELLELA's address, because they had arrested him in 2008 for credit card theft and credit card fraud and are familiar with his presence in the community. The Johnston Police Department do not believe that anyone besides

5

FELLELA and his family has resided in the house since 2008 and that FELLELA still resides there today. I know from publicly available property records that, as of 2018, FELLELA's wife is listed as the owner of the address of the house associated with the vehicle registration.

**Suspect Fraudulent Use of Credit Card belonging to B.T. and D.W.**

18. On February 7, 2019, an inspection of garbage left outside FELLELA's reported residence in Johnston, Rhode Island, revealed gambling receipts, recent mail addressed to FELLELA, and a Cricket brand mobile phone box with an International Mobile Station Equipment Identity (IMEI) number visible on the box. I know from my training and experience that an IMEI number is unique to a particular device and can be traced to the store where the device was sold.

19. On February 25, 2019, I confirmed that the phone associated with the box found in FELLELA's garbage was purchased at a Best Buy store in West Simsbury, Connecticut, on February 4, 2019. A $200 Best Buy gift card was purchased in the same transaction. My investigation revealed that the card used to purchase the phone was a Citibank credit card with two authorized users, B.T. and D.W. Neither B.T. nor D.W. have any apparent connection to FELLELA or the premises where the box for the phone was found. On February 12, 2019, B.T. and D.W. canceled the Citibank credit card after reporting fraudulent activity occurring on January 26, February 5, February 6, and February 7, 2019. All of the reported fraudulent purchases made with B.T. and D.W.'s card involved retailers located in Connecticut, including Best Buy and Staples.

20. On February 26, 2019, a mail cover initiated by United States Postal Inspection

Service revealed that FELLELA was still receiving mail at the address where garbage containing the Cricket phone box bought with B.T. and D.W.'s credit card was located.

21. Additionally, I reviewed video surveillance footage from the West Simsbury Best Buy during the time B.T. and D.W.'s credit card was used to purchase the Cricket phone and gift card. The individual seen making the purchases appears to be the same individual caught on video surveillance using S.G. and D.F.'s cards in September 2018 and October 2018, respectively, as he has a similar build, appears to be the same age, and walks in a similar manner as the individual seen in those videos. Additionally, the individual appears to wear the same items of clothing in different videos taken from different dates and locations, like a fedora-style hat and the same style of white sneakers. I have reviewed photographs of FELLELA, and I believe that the individual seen in the video bears a strong physical resemblance to FELLELA.

22. I know, based on my training and experience, along with my conversations with the U.S. Attorney's Office, that the credit cards issued in the names of victims S.G., D.F., B.T., and D.W. qualify as "access devices," as that term is defined in 18 U.S.C. § 1029(e)(1), as they are cards and numbers or other means of account access that can be used, along or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds.

23. I know, based on my training and experience, along with my conversations with the U.S. Attorney's Office, that access devices, such as the credit cards issued in the names of victims S.G., D.F., B.T., and D.W., qualify as "means of identification" as that term is described in 18 U.S.C. § 1028(d)(7).

## CONCLUSION

24. Based upon the foregoing, there is probable cause to believe and I do believe that, in or about September and October 2018, in the District of Connecticut and elsewhere, FELLELA, knowingly and with intent to defraud, used access devices, namely credit cards in the names of victims S.G., D.F., B.T., and D.W., and obtained things of value aggregating $1,000 or more within a one-year period, affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(2) (access device fraud).

25. There is also probable cause to believe and I do believe that, in or about September 2018, in the District of Connecticut, FELLELA did knowingly use, transfer, and possess, without lawful authority, a means of identification of another person known to FELLELA to be a real person, namely victim S.G., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, access device fraud, in violation of 18 U.S.C. § 1029(a)(2).

26. I therefore respectfully request that the Court issue the requested arrest warrant.

_____
JOSHUA L. GOVERNALE
Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn to before me
this 7th day of March, 2019
at Hartford, Connecticut

/s/ DFM

_____
HON. DONNA F. MARTINEZ
UNITED STATES MAGISTRATE JUDGE

8